Filed 3/10/14; pub. order 4/7/14 (received from court 4/14/14; see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PEDRO AREVALO,<br><br>    Defendant and Appellant. | G047523<br><br>(Super. Ct. No. 11CF3304)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Reversed.

Kyle D. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Stacy Tyler, and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Pedro Arevalo of second degree commercial burglary. On appeal, Arevalo contends the sole DNA evidence linking him to the burglary is insufficient to support his conviction. The Attorney General argues the presence of Arevalo's DNA on a rock purportedly used to effect entry to the crime scene and expert testimony about latent DNA is sufficient evidence to infer Arevalo's guilt. This DNA-only issue is somewhat unique and we rely on similar fingerprint-only cases to guide our analysis. (See *Mikes v. Borg* (9th Cir. 1991) 947 F.2d 353 (*Mikes*).) The critical question before us is whether Arevalo's DNA on a rock at the crime scene is, by itself, sufficiently substantial to allow any rational trier of fact to infer beyond a reasonable doubt Arevalo committed the burglary. As we explain, standing alone, a defendant's DNA on an object is insufficient evidence to support a conviction absent any facts showing the defendant's contact with the object could only have occurred during the commission of the crime. Therefore, because there is no evidence of when, where, or how Arevalo came in contact with the rock or any evidence connecting him with the burglary, we find the mere presence of his DNA is insufficient evidence to convict him of burglary. The judgment is reversed.

## I

An Loc Dinh Bui and his wife owned and operated a nail salon at a strip mall on North Tustin Avenue in Santa Ana. The salon's front door was comprised of six glass panes. One morning in December 2009, Bui arrived at the salon to open the business and found the pane of glass nearest the doorknob on the front door shattered and the door closed but unlocked. The salon did not have an alarm or surveillance cameras. Bui found missing from the salon two televisions, $200 cash, a CD player, and a DVD player.

Police arrived at the salon shortly after Bui reported the break-in. Leonard Correa, a forensic specialist, conducted a crime scene investigation. Correa swabbed

several items for DNA samples, including a rock he discovered underneath a nail station inside the salon.

One year later, a forensic scientist from the Orange County Crime Lab (Crime Lab) notified police the rock's swab sample identified a DNA profile that distinguished Arevalo as a possible match. Police were unable to contact Arevalo until November 2011, at which time a police detective collected a specimen of Arevalo's DNA using a cheek swab. Crime Lab analysts tested the specimen and determined it matched the DNA sample extracted from the rock.[1]

Based only on this DNA match, an information charged Arevalo with second degree commercial burglary (Pen. Code, §§ 459, 460, subd. (b)); his jury trial commenced in August 2012. During the trial, the prosecution premised its case on the theory Arevalo used the rock to break the glass pane, and in so doing transmitted his DNA onto it.

*Bui's Testimony*

At the jury trial, Bui testified the salon opened around 9:00 a.m. but he usually arrived about 15 minutes before opening to clean up. He explained cleaning up entailed vacuuming and using a wet towel to wipe the nail stations and front desk. Bui stated he was the last person to leave the salon the night before the burglary occurred. His practice upon closing was to lock the door with one key. Bui called 911 when he discovered the broken glass pane, and only he and his sibling entered the salon before police arrived about 10 or 15 minutes later. Bui testified one of the missing televisions had been removed from a wall-mounted bracket that was still attached to the wall when he arrived.

---

[1] During the trial, a DNA expert witness explained the frequency of the DNA found on the rock is rarer than one in one-trillion unrelated individuals; this constituted a "very rare" frequency. She explained although Arevalo cannot be excluded as the person whose DNA was on the rock, the DNA "match[ed]" Arevalo's DNA specimen; she concluded they were the same DNA.

*Correa's Testimony*

Correa testified he investigated the crime scene on the day Bui reported the burglary. He testified there were two landscaped areas at the strip mall where the salon was located. Correa stated the glass pane nearest the doorknob of the salon's front door was smashed, and the only broken glass he located in the salon was on the floor immediately inside the doorway. He testified detached cables hung about 30 inches below the ceiling where one of the missing televisions had been mounted. Correa testified there were about five nail stations aligned from front to back on the east end of the salon. He Correa explained the nail stations were to the left hand side upon entering the salon's front door. He located a rock on the floor underneath the third nail station from the front. Correa could not remember the rock's color or describe any details about it, but he recalled it was "handheld"—or could fit in the palm of his hand.

Correa testified he looked for potential biological evidence, such as DNA, in isolated areas of disturbance. He explained taking samples from commonly handled areas at a business, like a doorknob, is unhelpful to the investigation because there could be hundreds of people leaving their DNA behind. Thus, Correa did not swab the doorknob with the lock for DNA because he considered it a high-traffic item. Rather, Correa swabbed the detached television and DVD cables because he believed they were in isolated areas. Correa also swabbed the rock he had located under the nail station for DNA. He testified the rock interested him because it did not belong to the business. Correa opined the rock was thrown through the glass pane to allow a person to reach inside and unlock the door to enter the salon.

Correa testified he processed the salon for any latent fingerprints and employed the same "isolated area[]" methodology used for biological evidence collection. He did not keep a log of the areas he attempted to obtain fingerprints from,

4

but he recalled dusting the missing television's wall-mount. No fingerprints developed on any surface he dusted.

*Jillian Zoccoli's Testimony*

Jillian Zoccoli, a forensic scientist at the Crime Lab and qualified DNA expert witness, testified she worked on the DNA evidence in this case. Zoccoli testified DNA analysis can be practiced on all kinds of objects a person comes in contact with, or even near contact with. Zoccoli explained a person could transmit DNA onto an object with blood, semen, saliva, or even the sweat from their hands just from handling the object. She stated someone could transmit DNA onto an object simply by speaking over it. She also explained it was possible, but unlikely, for someone to touch an object with their bare skin and not leave any DNA. Zoccoli further explained it is possible for a person wearing gloves that handled an object to leave undisturbed any latent DNA already existing on the object and not transmit their own DNA onto it.

Zoccoli stated that out of the three DNA swabs taken at the crime scene, only the rock's swab was sufficient to test. She stated the DNA source on the rock originated from an individual male person, rather than a mixture of multiple persons' DNA, and her analysis indicated the DNA found on the rock matched Arevalo's DNA profile. However, Zoccoli could not opine how Arevalo transmitted his DNA onto the rock because, she explained, DNA analysis cannot make any determinations on the method by which someone placed their DNA on an object. Additionally, Zoccoli testified she had no way of knowing where the rock was located when Arevalo came in contact with it.

Zocolli also explained DNA analysis cannot determine how long DNA had been on an item. She testified someone's DNA could remain on a rock for a year, but explained certain environmental factors can degrade latent DNA. Specifically, Zoccoli explained environmental factors such as sun exposure, rain, and dirt affect how long DNA would remain on an object. But Zoccoli testified she could not offer an opinion on

5

how long Arevalo's DNA had been on the rock or whether environmental factors affected the DNA sample in this case.

II

A.  *Standard of Review*

"In reviewing a sufficiency of evidence challenge, we view the evidence in the light most favorable to the verdict and determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653.) "'"[We] must review the whole record . . . to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value . . . ." [Citation.]' [Citation.] 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.]" (*People v. Curry* (2007) 158 Cal.App.4th 766, 778.)

"By definition, 'substantial evidence' requires *evidence* and not mere speculation.  In any given case, one 'may *speculate* about any number of scenarios that may have occurred . . . . A reasonable inference, however, "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.  [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to the probabilities without evidence."' [Citations.]" (*People v. Cluff* (2001) 87 Cal.App.4th 991, 1002; see *People v. Hughes* (2002) 27 Cal.4th 287, 365 ["inference is not reasonable if it is based only on speculation"]; see also *People v. Redmond* (1969) 71 Cal.2d 745, 755 [evidence raising a mere suspicion cannot support a conviction because suspicion is not evidence].)

B.  *Burglary Elements*

The elements of burglary are:  Entry into a building with the intent to commit a felony or theft.  (Pen. Code, § 459.)  Entry occurs when part of a person's body or an instrument, like a rock, penetrates the outer boundary of a building.  (See *Magness v. Superior Court* (2012) 54 Cal.4th 270, 273.)  "'[T]he roof, walls, doors, and windows

6

constitute parts of a building's outer boundary, the penetration of which is sufficient for entry.' [Citation.]" (*Id.* at p. 274.)

## C.  Relevant Law

This is a DNA-only case—a case where the *only* evidence inculpating the defendant to the crime is the defendant's DNA.  Here, Arevalo's DNA was detected on a rock found under a nail station.  There is no corroboratory evidence placing him at or near the nail salon during the crime such as surveillance images or eyewitness accounts.  In this DNA-only case, we rely on an analogous fingerprint-only case, *Mikes v. Borg* (9th Cir. 1991) 947 F.2d 353 (*Mikes*) which proves relevant and instructive.

In *Mikes, supra,* 947 F.2d at pages 356-357, the Ninth Circuit held "in fingerprint-only cases in which the prosecution's theory is based on the premise that the defendant handled certain objects *while committing the crime in question*, the record must contain sufficient evidence from which the trier of fact could reasonably infer that the fingerprints were in fact impressed at that time and not at some earlier date."  The court found the mere existence of the defendant's fingerprints on the murder weapon, a turnstile post discovered at the crime scene, was insufficient evidence to infer he was the murderer, absent other circumstantial evidence.  (*Id.* at pp. 357-358.)  Prior to the murder, the turnstile posts were offered for sale (as part of a used turnstile) in a hardware store where they were accessible to the general public.  (*Id.* at p. 358.)  The victim had purchased the used turnstile and stored it in the basement of his fix-it-shop, which became the scene of the crime.  (*Id.* at p. 355.)

The *Mikes* court explained "there must, at the very least, be sufficient evidence in the record to permit the factfinder to determine *when* the fingerprints were impressed; otherwise, any conviction would be based on pure speculation.  [Citation.]" (*Mikes*, *supra*, 947 F.2d at p. 357.)  The court explained to eliminate any possibility the defendant had handled the turnstile post while it was publicly accessible in the hardware store, the prosecution must present evidence showing it was *inaccessible* to the defendant

7

during the "[relevant] time prior to the commission of the crime during which the defendant reasonably could have placed his fingerprints on the object in question *and* during which such prints might have remained on that object." (*Ibid.*) This determination rested on "specific facts" regarding "the circumstances surrounding the custody or location of the object, as well as its function, the accessibility of the object to the defendant, and the extent to which the object was or could have been handled by others." (*Id.* at pp. 357-358.) The court also considered facts about the fingerprint's durability. (*Id.* at p. 358.)

The reasoning set forth in *Mikes* for fingerprint-only cases where the prosecution exclusively relies on the defendant's contact with an object is equally applicable to DNA-only cases. In both situations, the issue becomes whether there is sufficient evidence from which a rational trier of fact could reasonably conclude contact with an object could not have occurred other than in connection with the crime. That conclusion rests on a variety of factors, including: (1) the circumstances surrounding the custody or location of the object prior to the crime; (2) the object's function and connection to the crime; (3) the defendant's access to the object; (4) the extent to which other people had or could have contacted the object; and (5) the latent DNA's durability and whether environmental factors caused degradation.

In *Mikes*, the prosecution relied solely on evidence of the defendant's fingerprints. (*Mikes, supra,* 947 F.2d. at p. 357.) Here, the prosecution relies solely on evidence of Arevalo's DNA. In *Mikes* the object from which the fingerprint evidence was obtained was clearly related to the crime. There was no question it was the murder weapon. (*Ibid.*) Here, the prosecution *theorized* the object from which Arevalo's DNA was obtained was used as a means of entry. The only evidence linking the rock to the commission of the crime is Correa's opinion he thought the rock was thrown through the glass pane to allow a person to reach inside and unlock the door. Correa testified he swabbed the rock for DNA because he believed it did not belong in the nail salon. No

8

DNA or fingerprints were found on the door handle.  Nor was there any other evidence offered to support Correa's opinion the rock was the means of entry.  It is important to note Correa did not render this opinion as an expert.

The only evidence presented about the rock itself was Correa's testimony that it was palm-sized and discovered underneath the third nail station from the front on the east end of the salon, and it contained Arevalo's DNA.  That is all.  There is no circumstantial evidence as to the origin of the rock; whether it came from the strip mall where the nail salon was located or elsewhere.  Correa's belief as to where the rock did or did not belong does not provide a factual basis from which anyone could reasonably infer the rock's place of origin.

Unlike in *Mikes* where the object's relationship to the crime was clear and definite, here the relationship between the rock and the crime is far weaker and is best described as speculative.  In *Mikes*, the court found the mere existence of the defendant's fingerprints on the murder weapon, a turnstile post discovered at the crime scene, was insufficient evidence to infer the defendant was the murderer, absent other circumstantial evidence.  (*Mikes, supra,* 947 F.2d. at p. 361.)  Here, we reach a similar conclusion.  Absent other circumstantial evidence, the mere existence of Arevalo's DNA on a rock at the crime scene is insufficient evidence to infer Arevalo committed the burglary.

The Attorney General asserts *Mikes* is distinguishable from this case because in *Mikes* multiple people's fingerprints were impressed on the turnstile post, whereas here only Arevalo's DNA was discovered on the rock.  Apparently the Attorney General wants us to assume the lack of other DNA on the rock proves Arevalo is the only individual who came in contact with the rock.  We are not persuaded.  Zoccoli, the forensic scientist called by the prosecution, did not testify that the absence of other DNA established no other person had come in contact with the rock.

The Attorney General argues this case is similar to *People v. Tuggle* (2012) 203 Cal.App.4th 1071, 1076 (*Tuggle*), where the court held defendant's incriminating

9

fingerprints were sufficient to infer guilt of burglary because the fingerprints were discovered on a vase in a model home that had been regularly cleaned and had not been accessible to the general public for over six months. The court concluded there was sufficient circumstantial evidence to arouse a reasonable inference defendant contacted the vase contemporaneous to the crime based on the regular cleanings, the vase's inaccessibility, and defendant's post-arrest statements. (*Ibid*.) Here, the record contains no specific facts regarding the rock's prior custody, location, or accessibility to Arevalo or anyone else. Consequently, the record does not provide sufficient circumstantial evidence to infer guilt of burglary. Thus, *Tuggle* is inapplicable.

Alternatively, the Attorney General asserts Zoccoli's testimony regarding DNA degradation is sufficient evidence to support the inference Arevalo transmitted his DNA onto the rock at the time of the burglary. We disagree.

Zoccoli testified DNA analysis itself cannot determine a specific time-frame for when the DNA was transmitted onto an item and she was unable to offer any opinion on how long Arevalo's DNA had been on the rock in question. Although Zoccoli stated environmental factors such as sun exposure, rain, and dirt could degrade a latent DNA sample, she was unable to offer an opinion on what sorts of environmental factors may have affected Arevalo's DNA on the rock, if any. Therefore, Zoccoli's testimony regarding DNA degradation can arouse nothing more than speculation and guesswork pertaining to the rock in this case.

The need for a connection between the object and the crime rather than just a connection between the object and the defendant is confirmed in *Birt v. Superior Court* (1973) 34 Cal.App.3d 934, 936-937. The *Birt* court held the mere presence of defendant's fingerprint on a cigarette lighter found inside a van used to remove stolen items from burglarized premises was insufficient to establish probable cause she committed burglary. The court reasoned, "The cigarette lighter, bearing petitioner's fingerprint, was a readily movable object[,] [was not shown to have been a stolen item,]

10

[and t]he van itself was a rental vehicle available to the public." (*Id.* at p. 938.) The court concluded, "At most, the presence of petitioner's fingerprint on the lighter found on the front seat showed that, at some unknown time and place, she had been inside the van; but there was no direct or circumstantial evidence to indicate when and where that had been. Only by guesswork, speculation, or conjecture can it be inferred that petitioner was inside the van, or in the area, at the time of the . . . burglary. [Citations.]" (*Ibid.*) Likewise, in this case the rock is a readily moveable object accessible to the public. Without circumstantial evidence showing when and where Arevalo's contact with the rock occurred, a fact finder could not rely on the DNA evidence alone to convict Arevalo.

III

Absent the DNA evidence there is no evidence connecting Arevalo to the burglary. Therefore, there is no substantial evidence Arevalo committed the crime. We reverse the judgment.

O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.


11

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>         v.<br><br>PEDRO AREVALO,<br><br>    Defendant and Appellant. | G047523<br><br>(Super. Ct. No. 11CF3304)<br><br>O R D E R |

        The County of Orange Alternate Defender, The County of Sacramento Office of the Public Defender, and the San Joaquin County Public Defender, have separately requested that our opinion filed March 10, 2014, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

        The opinion is ordered published in the Official Reports.


                                        O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.


12